# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

DAVID W. SVETE,                    :

      Plaintiff,              :          Case No: 3:07cv00197

v.                                 :          District Judge Walter Herbert Rice
                                              Magistrate Judge Sharon L. Ovington

CHERNESKEY HEYMAN &                :
KRESS, *et al.*,
                                   :
      Defendants.             :

                                   :

---

## REPORT AND RECOMMENDATIONS[1]

---

## I.

      Plaintiff David W. Svete, an inmate at the Elkton Federal Correctional Institution in Elkton, Ohio, brings this case *pro se* asserting seventeen claims for relief against his former attorneys and their law firm. Svete's Complaint asserts seventeen claims for relief: (1) breach of contract, (2) negligent misrepresentation, (3) misrepresentation, (4) common law fraud, (5) civil conspiracy, (6) negligence, (7) gross negligence, (8) breach of fiduciary duty, (9) conspiracy to breach fiduciary duty, (10) breach of attorney-client privilege, (11) malpractice, (12) slander/defamation, (13) tortious interference with prospective advantage, (14) intentional infliction of emotional distress, (15) negligent infliction of emotional distress, (16) indemnity, (17) wrongful incarceration/wrongful loss of liberty. (Doc. #3 at 55-91). Svete's Complaint names the law firm of Chernesky,

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Heyman & Kress P.L.L. and sixteen individual Defendants, not counting "various John and Jane Does." *Id.* at 1. He alleges that Defendants have caused him huge financial losses. For example, each of his first through eleventh claims for relief alleges damages in excess of $125,000,000.00, and in support of his sixteenth claim for relief, he alleges that he "has suffered damages in excess of $500,000,000.00." (Doc. #3 at p. 87).

The case is presently pending upon Defendants' Motion For Summary Judgment (Doc. #54), Svete's Motion For Ruling On Two Motions Pending Before The Court (Doc. #60), Svete's Motion For The Court To Direct United States Marshals To Serve Remaining Unserved Defendants (Doc. #61), Svete's Motion to Compel (Doc. #62), Defendants' Response In Opposition To Svete's Motion To Compel (Doc. #63), Svete's Pro Se Motion For Continuance Pursuant To Rule 56(f) ... And Affidavits In Support (Doc. #65), Svete's Reply In Support Of Motion To Compel (Doc. #66), Defendants' Memorandum In Opposition To Motion To Continue (Doc. #67), and the record as a whole.

## II.

Before delving into the presently pending Motions and Memoranda, the Court must consider whether it has subject matter jurisdiction over this case. In a prior Decision and Entry, District Judge Walter Herbert Rice asked the undersigned to ensure that diversity jurisdiction exists in this case, noting both that Svete alleges he is a citizen of Texas and that he is currently incarcerated in a federal prison in Ohio for crimes he committed in connection with his corporation, which had its principal place of business in Ohio. (Doc. #8 at 2). The Court, moreover, has "a duty to consider [its] subject matter jurisdiction in regard to every case and may raise the issue *sua sponte.*" *Answers in Genesis of Ky., Inc. v. Creation Ministries Intern., Ltd.,* 556 F.3d 459, 465 (6th Cir. 2009); *see Moore v. City of Harriman*, 272 F.3d 769, 791 (6th Cir. 2001) ("Because it may have no authority to act, a federal court must determine at the outset whether it has jurisdiction to decide the case.").

Svete's Complaint asserts subject matter jurisdiction based on diversity of citizenship. (Doc. #3 at 2). Two requirements must therefore be met: (1) complete diversity of citizenship between Svete and Defendants, and (2) an amount in controversy exceeding $75,000.00. *See* 28 U.S.C. §1332(a)(1); *see also Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978); *Certain Interested Underwriters and Lloyd's of London v. Layne*, 26 F.3d 39, 42 (6th Cir. 1994)(citing *Strawberry v. Curtiss*, 7 U.S. (Cranch) 267, 2 L.Ed. 435 (1806)).

As Judge Rice noted, Svete alleges that he is a citizen of Terrant County, Texas. (Doc. #3 at 2). His asserted Texas citizenship is not automatically altered by his incarceration in a federal penitentiary in Ohio. *See Stifel, II v. Hopkins*, 477 F.2d 1116, 1126 (6th Cir. 1973); *see also Johnson v. Corrections Corporation of American*, 26 Fed. Appx. 386, 388 (6th Cir. 2001)("there is a rebuttable presumption that a prisoner retains his former domicile after incarceration."). Consequently, without the benefit of briefing by the parties or additional evidence concerning Svete's apparent intent to return to Texas after his release from incarceration, the record suffices at present to place his citizenship in Texas. Given that Defendants are citizens of Ohio, complete diversity of citizenship exists. Svete's Complaint alleges an amount in controversy exceeding $75,000.00. Consequently, the Court has subject matter jurisdiction in this case under 28 U.S.C. §1332(a)(1).

## III.

Svete alleges in his Complaint that he hired Defendants to represent him in a prior case filed in this Court in 2004 – *Davis v. LifeTime Capital, Inc., et al.*, 3:04cv00059 (the *LifeTime* litigation). The Amended Complaint in the *LifeTime* litigation named Svete as a Defendant.

The lengthy Complaint in the present case identifies the parties, then turns to a Statement of Facts describing the *LifeTime* litigation and his former attorneys acts and omissions during that case. Svete alleges that when he received service of the Amended

Complaint in the *LifeTime* litigation, he informed the Court-appointed Receiver and others "that there was no statutory authority for the lawsuit, due to the arbitration agreements that were in place." (Doc. #3 at 11). Svete based this theory on his assertion that all contracts and agreements at issue in the *LifeTime* litigation contained mandatory arbitration clauses. *Id*. at 9-10.

Svete's Complaint explains that in September 2004 he retained Defendant Chernesky, Heyman & Kress, P.L.L. to represent him in the *LifeTime* litigation. (Doc. #3 at ¶64). He paid the law firm "a fee for initial retainer." *Id*. at ¶65. And he asserts that he had an attorney-client relationship with Defendants. *Id*. at ¶66.

To better understand Svete's allegations and claims, two sets of facts are worth exploring: one concerning his federal criminal convictions; the other concerning the *LifeTime* litigation.

\*

Svete acknowledges in his Complaint that in March 2005 he "was convicted by a jury trial in the Northern District of Florida," and he was sentenced to 200 months in federal prison. (Doc. #3 at ¶s 128-29).

The jury in Svete criminal trial found him guilty of all counts as charged including, "conspiracy to violate the laws of the United States in violation of 18 U.S.C. § 371 (Count One); conspiracy to launder money in violation of 18 U.S.C. § 1956(h) (Count Two); mail fraud in violation of 18 U.S.C. § 1341 (Counts Three through Seven); and substantive violations of interstate transportation of money obtained by fraud in violation of 18 U.S.C. § 2314 (Counts Eight through Ten)." (Doc. #54, Exh. A at 2-3)." (Doc. #54, Exh. A at 2-3).

Svete states in his Complaint that he "continues to maintain his innocense in said criminal case, and his conviction is currently under Direct Appeal. Such conviction is therefore not a final judgment, and it is expected to be reversed upon Direct Appeal." *Id*. at ¶130. Svete's expectation, however, did not bear fruit because an *en banc* panel of the

United States Court of Appeals for the Eleventh Circuit affirmed his convictions –
without dissent – for mail fraud and his remaining convictions were affirmed in April
2009. (Doc. #54, Exhibit B).[2]

The en banc panel of the Eleventh Circuit Court of Appeals explained the factual
basis for Svete's convictions as follows:

> Svete, Girardot,[3] and their agents were in the business of selling
> financial interests in viatical settlements, which are financial products based
> on agreements with persons (known as viators) who have terminal illnesses
> and sell their life insurance policies to third parties for less than the mature
> value of the policies to benefit from the proceeds while alive. Companies
> controlled by Svete obtained more than one hundred million dollars from
> more than 3000 investors, more than a third of whom were over the age of
> 65. Investors who purchased these financial interests from agents of Svete
> and Girardot testified at trial that the sales agents made false statements and
> provided them with literature that contained false statements about the life
> expectancies of viators, the status of the life insurance contracts, and the
> risks associated with the investments.
>
> Thirty-five investors testified at the trial that sales agents told them
> that the insurance policies were held by terminally ill patients as determined
> by independent medical specialists who had access to the viators' complete
> medical records and doctors, but these statements by the sales agents were
> false. The viators were not terminally ill, and the information that was
> reviewed by independent medical professionals was incomplete. The
> information about many viators was never reviewed by independent
> doctors. Svete directed a medical underwriter who worked for him to create
> sham opinions of life expectancy and endorse them with the forged
> signatures of independent physicians. Some investors testified that they
> were told that 'nobody lives past the terminally ill date,' and other investors
> were told that the viators were supposed to die within six months and, if the

---

[2] The appellate decisions concerning Svete and his criminal convictions are a matter of public
record. *United States v. Svete*, 565 F.3d 1363 (11th Cir. 2009); *United States v. Svete*, 556 F.3d 1157 (11th
Cir. 2009) (en banc); *United States v. Svete*, 521 F.3d 1302 (11th Cir. 2009). On direct appeal, a three-
judge panel reversed Svete's mail fraud convictions but that decision was vacated and an en banc panel
eventually affirmed his mail fraud convictions. (Doc. #54, Exh. B).

[3] Ron Girardot was a co-defendant of Svete and his former "right hand man." (Doc. #54, Exh. A
at 4).

viator did not die in that time, the investors need not worry. Many of the investments failed to mature when expected, and the investors were obligated to make additional premium payments when the viator lived longer than expected.

Investors who purchased interests in the viatical settlements were required to sign contracts that acknowledged that the investors had not relied on any representations other than those contained in the contracts. The contracts also contained acknowledgments that the investors were sophisticated in financial matters and had sought or had access to professional advice and that the projected demise dates were only estimates. Several of the investors testified at trial that they did not read or did not understand the contracts and relied on the statements of the sales agents. Nanette Zima, who served as president of LifeTime Capital, Inc., which was the brokerage company formed by Svete in 1997, testified that Svete and Girardot instructed her to alter contracts that had previously been signed by investors without the knowledge or consent of the investors who had signed them.

(Doc. #54, Exh. B at 3-4; *Svete*, 556 F.3d at 1160) (footnote added).

The scope of the financial harm Svete caused is reflected in the trial court's decision to include a $100,722,605.34 restitution Order along with his sentence. (Doc. #54, Exh. A at 3). Having harmed so many by defrauding them of so much, Svete is currently serving the 200-month sentence he mentions in his Complaint.[4] *See id.* at 2-3.

\*

The second set of background facts concerns the *LifeTime* litigation.

LifeTime Capital, Inc. was the central vehicle, though not the only one, Svete used to conduct his criminal activities. In January 2004 the criminal underpinnings and fragile financial health of LifeTime Capital, Inc. began to emerge when the federal criminal prosecution against Svete and others began in the Northern District of Florida. *See* 3:04cv00059, Doc. #1, Exhibit B. About three weeks later, the *LifeTime* litigation began

---

[4] Public information available on the United States Supreme Court's website reveals that on November 16, 2009, Svete filed a petition for writ of certiorari in the Supreme Court and motion to proceed in forma pauperis. The response is due December 17, 2009.

in this Court.

The circumstances then existing – especially the great financial danger posed to investors by the possible complete loss of LifeTime Capital's assets – led to the filing of the Complaint in the *LifeTime* litigation.  *See* 3:04cv00059, Doc. #1.  Simply put, LifeTime Capital had failed to maintain sufficient funding to make timely payments of insurance premiums, without which investors' as a group faced millions of dollars in lost investments, with many individual investors facing significant – if not staggering – financial harm.  The Complaint therefore sought, in part, the appointment of a Receiver for LifeTime to take control and to administer the assets of LifeTime for the benefit of investors.  *Id*. at 8-11.  LifeTime Capital's President, Phyllis E. Lucas, filed a Waiver and Consent to Appointment of Receiver on LifeTime Capital's behalf.  (3:04cv00059, Doc. #4).  The Court took exclusive possession of the assets of LifeTime Capital, placed LifeTime Capital into receivership, and appointed a Receiver.  The appointment Order authorized the Receiver "to take any and all action ... necessary or prudent for the preservation, maintenance, and administrative of the LifeTime Portfolio comprised of viatical and life settlement polices and beneficial interests therein...."  (3:04cv00059, Doc. #6 at 3; *see* Doc. #23).

As with receiverships in general – including those created in cases involving other similar viatical schemes gone sour – the goal of the LifeTime Receivership was to maintain, recover, and distribute LifeTime Capital's assets for the collective benefit of the investors.  *See id*. Doc. #s 6, 23; *see, e.g., Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006) ("A district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court.  The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary.").

Svete's claims in the present case are based, in part, on Defendants' failure to

object to the creation of the LifeTime receivership, to the appointment of the LifeTime Receiver, and to the appointment of the Examiner. *See, e.g.,* 3:07cv00197, Doc. #3 at 27-29. This leads back to Svete's Complaint in the present case.

*

The bulk of Svete's present allegations essentially seeks to support his overarching assertion that Defendants committed legal malpractice and other wrongs by failing to properly represent him and his interests during the *LifeTime* litigation. Svete alleges that Defendants isolated him from the happenings during the *LifeTime* litigation, causing him damage such as the loss of millions of dollars "in the bogus sale of the LifeTime Portfolio." (Doc. #3 at ¶271).

Svete points out that on October 4, 2004, a Motion to Dismiss filed by Defendant Whelley in the *LifeTime* litigation was stricken but never resubmitted. (Doc. #3 at ¶s 68-70). The next day Defendant Whelley filed an Answer on behalf of Svete and a Motion to Stay arguing in part that the case should be stayed "pending contractually-agreed arbitration." (Doc. #3 at ¶s 71-72; *see* Doc. #98 at 4). The Court later found the Motion meritless and overruled it. (Doc. #297).

Defendant Solle entered her appearance in the *LifeTime* litigation on October 6, 2004. (Doc. #3 at ¶73; *see* Doc. #100).

Svete alleges that Defendants failed to zealously represent him during the *LifeTime* litigation in many ways. He alleges that Defendants never sent him copies of what they filed on his behalf in the *LifeTime* litigation. He further mainly alleges that Defendants did not send him a copy of the Court's Pooling Order; Defendants did not object to or appeal the Pooling Order; Defendants did not advise him of the ramifications of the Pooling Order or his options related to the Pooling Order; Defendants did not zealously represent his interests, or oppose the Receiver's involvement, in judicial proceedings in British Columbia; and Defendants failed to move for recusal of the undersigned Judicial

Officer from the *LifeTime* litigation based on her purported conflict of interest.[5]

Svete alleges that after his convictions (March 2005) and near the date (August 15, 2005) when he self-surrendered to federal prison, Defendants withdrew from representing him in the *LifeTime* litigation without notifying him and without protecting his right to due process in the *LifeTime* litigation.

## IV.

Defendants contend that they are entitled to summary judgment because each of Svete's claims for relief sounds in legal malpractice because each claim is based on alleged acts or omissions by Defendants in their representation of him during the *LifeTime* litigation. Defendants reason that when Svete's claims are analyzed under the legal-malpractice umbrella, the claims are barred by a one-year statute of limitations and also fail because he cannot prove the elements of legal malpractice against any Defendant. Defendants further contend, for various reasons, that they are entitled to summary judgment if each claim is analyzed separately.

Svete argues in part that he should be granted a continuance under Fed. R. Civ. P. 56(f) to enable the parties to conduct discovery before he is required to respond to Defendants' Motion for Summary Judgment. Svete points out that he is incarcerated; he is proceeding pro se; he is not a licensed attorney, lacks access to the internet, to computers, to email, or to printers; his access to the prison library is restricted; and telephone privileges are extremely restricted as are visits from outsider visitors. Svete again acknowledges that he was convicted of certain crimes after a nearly ten-week trial, but he maintains his innocence. (Doc. #65 at 5 and n.4).

In his Rule 56(f) Motion, Svete explains that he opposes summary judgment on several bases all of which involved genuine issues of disputed material facts including,

---

[5] Svete filed a Motion for Recusal (Doc. #6) in the present case, which was denied for reasons detailed in a prior Order (Doc. #10).

but not limited to, the following:

> a) the facts of the instant complaint are not precluded by the facts of any prior litigation; b) the Defendants were the only attorneys representing Svete in the <u>Davis</u> case [the *LifeTime* litigation] – ever; c) the Defendants did not serve Svete with the Motion to Withdraw they filed in the <u>Davis</u> case; d) Svete's personal attorneys in Miami ... were not designated, appointed, or authorized to receive or accept service of process for Mr. Svete; e) Svete's personal attorneys, Homer Bonner, P.A. did not receive or accept service of process for Svete with respect to Defendants' Motion to Withdraw or any other court filing or order in the <u>Davis</u> case; f) the Defendants had, but did not use, or provide to the Court, Receiver, Examiner, or other parties in <u>Davis</u>, Svete's correct and valid telephone number and mailing address; the Defendants did not notice Mr. Svete of the (2) telephone conferences in <u>Davis</u> concerning their withdrawal of representation of Mr. Svete; g) the Defendants knew that Mr. Svete was self-surrendering to federal prison on 08-15-09, the day of the second telephone conference in <u>Davis</u> concerning their withdrawal of representation of Svete and the day of the Court's Order granting their Motion to Withdraw; h) the Defendants made material misrepresentations and omissions to the Court in their Motion to Withdraw, as well as in the (2) telephone conferences concerning such motion, I) the issue of whether <u>Davis</u> claims against Mr. Svete were barred by arbitration agreements, or by affirmative defenses, had not been decided in the criminal case of <u>U.S. v. Svete</u>; j) the Defendants have had continuing discussions with opposing Counsel in the <u>Davis</u> case, after their withdrawal as Svete's Counsel; k) the Defendants failed to advise Mr. Svete on material events in the <u>Davis</u> litigation; l) the Defendants breached their fiduciary duty to Mr. Svete; m) Mr. Svete's claims were timely filed; etc.

(Doc. #65, ¶20). In a footnote Svete states that he is incorporating by reference an attached Exhibit. *Id*. at n.5. The Exhibit is the affidavit of attorney R. Lawrence Bonner of the law firm, Homer and Bonner, P.A. (Doc. #65, Exh. B). Bonner states in the affidavit that he never represented Svete in the *LifeTime* litigation, he never agreed to accept service on Svete's behalf, and Svete never authorized him to accept such service. Svete has also attached his own affidavit to his Motion for Continuance. *Id*., Exh. A.

*

Under Rule 56 a party is entitled to summary judgment when there is no genuine

dispute over any material fact and when the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247 (1986).

> The moving party bears the burden of demonstrating that there are no genuine issues of material fact, which may be discharged by 'showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.  The nonmoving party must then put forth 'significantly probative' evidence supporting its claims in order to defeat summary judgment.  Of course, we must be mindful that summary judgment is inappropriate whenever the evidence raises a genuine issue of material fact, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Macy v. Hopkins County School Bd. of Educ*., 484 F.3d 357, 363 (6th Cir. 2007) (internal citations and quotation marks omitted); *see Hager v. Pike County Bd. of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

The party opposing summary judgment must be given a full opportunity to conduct discovery.  *Cardinal v. Metrish*, 564 F.3d 794, 797 (6th Cir. 2009).  Rule 56(f) of the Federal Rules of Civil Procedure requires the party seeking additional discovery to indicate by affidavit "the need for discovery, what material facts may be uncovered, and why the information has not been previously discovered."  *Egerer v. Woodland Realty, Inc*., 556 F.3d 415, 426 (6th Cir. 2009)*; see Cardinal*, 564 F.3d at 797.  When the additional discovery, viewed in favor of the party opposing summary judgment, would not assist that party in establishing a genuine issue of material fact, the Rule 56(f) Motion may be denied and summary judgment may be granted.  *See Egerer*, 556 F.3d at 427; *see also Thornton v. Graphic Communications Confer*., 566 F.3d 597, 618 (6th Cir. 2009)(denial of 56(f) motion not an abuse of discretion when additional discovery would not affect outcome of the case); *Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc*., 936 F.2d 889, 894 (6th Cir. 1991).

*

Svete's Complaint, as noted above, raises seventeen claims for relief.  His most

significant claim for present purposes is his malpractice claim (eleventh claim for relief). In support of his malpractice claim, Svete incorporates and realleges his prior allegations (in paragraphs 1 through 443), and he alleges that Defendants committed legal malpractice by withdrawing from their representation of him during the *LifeTime* litigation without notice, without ensuring he had adequate representation, without providing him with copies of all the documents filed in the *LifeTime* litigation, and without waiting for the conclusion of his direct appeal of his criminal convictions. (Doc. #3 at 75-77).

The elements of Svete's legal malpractice claim are "(1) an attorney-client relationship giving rise to a duty, (2) a breach of that duty, and (3) damages proximately caused by the breach." *Palmer v. Fox Software, Inc*., 107 F.3d 415, 420 (6th Cir. 1997) (quoting *State ex rel. Sellers v. Gerken*, 72 Ohio St.3d 115, 117, 647 N.E.2d 807, 810 (1995)(other citation omitted). These elements are fleshed out a bit when a malpractice claim is based on negligent representation as follows: "(1) ... the attorney owed a duty or obligation to the plaintiff, (2) ... there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) ... there is a causal connection between the conduct complained of and the resulting damage or loss." *Kovacs v. Chesley*, 406 F.3d 393, 397-98 (6th Cir. 2005).

Defendants Whelley, Solle, and Chernesky, Heyman & Kress acknowledged that they represented Plaintiff in the *LifeTime* litigation from October 2004 to August 15, 2005. The record in *LifeTime* litigation confirms this. (3:04cv00059, Doc. #s 97-98, 285). As a result, there is no genuine dispute over the existence of an attorney-client relationship between these three Defendants and Plaintiff from October 2005 to August 15, 2005 and that, as a result, these three Defendants owed certain duties to Plaintiff during this period. As a result, no genuine dispute exists over the first element of legal malpractice as to these three Defendants.

In contrast, the record in the *LifeTime* litigation establishes that no other Defendant

named in Svete's Complaint in this case represented him during the *LifeTime* litigation. None of those attorneys entered an appearance on Svete's behalf and the *LifeTime*-litigation record does not otherwise indicate that any individual Defendant, other the Whelley and Solle, represented Svete during the *LifeTime* litigation. Consequently, there is no genuine issue over the fact that no attorney-client relationship existed between Svete and the other individual Defendants. *See Landis v. Hunt*, 80 Ohio App.3d 668, 669 (1992)(attorney-client relationship exists when "attorney advises others as to their legal rights, a method to be pursued, the forum to be selected, and the practice to be followed or for the enforcement of their rights.").

Even if an attorney-client relationship existed between Svete and all Defendants, he encounters insurmountable hurdles at the remaining elements of legal malpractice because of his own criminal conduct, his resulting federal criminal convictions, and the resulting financial harm he caused to LifeTime Capital and its investors. Although a legal malpractice plaintiff, like Svete, need not always show in every instance that he would have prevailed but for his counsel's acts or omissions in the underlying case, *see Vahila v. Hall*, 77 Ohio St.3d 421, 428, 674 N.E.2d 1164, 1170 (1997), the Ohio Supreme Court has explained:

> We are aware that the requirement of causation often dictates that the merits of the malpractice action depend upon the merits of the underlying case. Naturally, a plaintiff in a legal malpractice action may be required, depending on the situation, to provide some evidence of the merits of the underlying claim.

*Vahila*, 77 Ohio St.3d at 427-28, 674 N.E.2d at 1169-70; *see Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 212, 893 N.E.2d 173, 176-77 (2008). So it is in the present case.

Svete challenges Defendants' representation of him only during the *LifeTime* litigation. He has therefore placed Defendants' alleged acts or omissions squarely in the context of whether he had any meritorious claim or defense to advance in the *LifeTime*

litigation. Indeed, his theory of malpractice liability against Defendants is built on a broad central foundation – that he had meritorious grounds for opposing the creation of the LifeTime Receivership, the appointment of the Receiver and the Examiner, the issuance of the Pooling Order, and the collection and distribution of LifeTime Capital's assets to others, not to him. As a result, the merits of Svete's challenges to the *LifeTime* litigation are directly at issue. After all, if Svete lacked a legitimate challenge to the *LifeTime* litigation, Defendants could not have prevented the injuries he now claims – huge financial losses stemming from collection and distribution of LifeTime Capital's assets during the *LifeTime* litigation. And, without a legitimate challenge to the *LifeTime* litigation, Defendants' representation of him could not have proximately caused the financial losses he attributes to their representation of him or the results of the *LifeTime* litigation. *Environmental Network,* 119 Ohio St.3d at 212-13, 893 N.E.2d at 177-78 (plaintiff's sole malpractice theory was that a more favorable outcome would have resulted from trial, rather than settlement; consequently, plaintiff's theory "places the merits of the underlying directly at issue..."). The analysis thus turns to whether, in the instant case, Svete has pointed to the existence of any potential claim or defense in the *LifeTime* litigation.

Svete's allegations and claims in this case reveal that he views the *LifeTime* litigation through the lens of a man convinced of his own innocence. The reality, however, is that a jury of his peers found otherwise. A criminal judgment was accordingly entered against him and a lengthy sentence and large restitution Order were imposed. The jury's findings and the resulting criminal judgment have collateral estoppel effects on factual issues actually tried and decided during Svete's criminal trial. *See Frank v. Simon*, 2007 WL 866998 at *2 (6th Ohio App. 2007). Specifically, a "criminal conviction is conclusive proof and operates as an estoppel on defendants as to the facts supporting the conviction in a subsequent civil action." *Id.* Given the preclusive effects of his convictions, Svete cannot dispute the following facts, no matter how much

discovery he seeks to obtain in the present case. Each of Svete's criminal convictions was based on his dealing with viaticals. His convictions were based in part on evidence showing that he and others "intentionally misrepresent[ed]: (1) life expectancies of viators; (2) the status of the life insurance contracts; and (3) the risks associated with the purchase of certain viatical contracts." (Doc. #54, Exh. A at 5). The criminal trial evidence also showed that "Svete directed a medical underwriter who worked for him to create sham opinions of life expectancy and endorse them with forged signatures of independent physicians. Some investors were told that 'nobody lives past the terminally ill date,' and other investors were told that the viators were supposed to die within six months and, if the viator did not die in that time, the investors need not worry." (Doc. #54, Exh. B at 4). A former president of LifeTime Capital testified that "Svete and Girardot instructed her to alter contracts that had previously been signed by investors without the knowledge or consent of the investors who had signed them." *Id*. at 5.

Because of these and other facts supporting Svete's convictions, which, of course, were proved to the jury beyond a reasonable doubt in his criminal trial, Defendants in the present case could have done little – if anything – to challenge the receivership and related matters during the *LifeTime* litigation. Svete, moreover, still believing in his own innocense, can see only wrongdoing throughout the *LifeTime* litigation, and he thus seeks in the present case to place on Defendants both the alleged financial consequences to him for not stopping it. Yet, Svete's perspective ignores the reality of his own misconduct – which no amount of discovery in this case could alter – his resulting federal criminal convictions, and the harm he caused so many. Defendants could do nothing in the *LifeTime* litigation, and Svete can do nothing in the present case, to alter those facts and circumstances. It was, instead, Svete's criminal misconduct that led to the creation of the LifeTime receivership to assist LifeTime Capital's investors in recovering what Svete and others had wrongfully taken from them. It was Svete's criminal misconduct, not the alleged acts or omissions of Defendants, that proximately caused him the financial harm

he alleges in his present Complaint.  As Defendants cogently point out, "these 'damages' Plaintiff is attempting to claim are funds that he has been ordered to pay *back* to the victims of his crimes.  They are not funds that Plaintiff is now or ever has been entitled to."  (Doc. #54 at 14)(emphasis in original).

In addition, Defendants are correct that each of Svete's claims for relief sounds in legal malpractice.  "Malpractice by any other name still constitutes malpractice." *Rumley v. Buckingham, Doolittle & Burroughs*, 129 Ohio App.3d 638, 641, 718 N.E.2d 964, 967 (1998).  "[M]alpractice consists of 'the professional misconduct of members of the medical profession and attorneys.'  Such professional misconduct may consist of either negligence or of breach of the contract of employment.  It makes no difference whether the professional misconduct is founded in tort or contract, it still constitutes malpractice.'" *Rumley*, 129 Ohio App.3d at 641-42, 718 N.E.2d at 967 (quoting *Richardson v. Doe*, 176 Ohio St. 370, 372, 199 N.E.2d 898 (1964)).  Because each of Svete's claims is based on Defendants' alleged acts or omissions during the *LifeTime* litigation, his attempt to recast them into something other than a legal malpractice claim lacks merit.  *See Rumley*, 129 Ohio App.3d at 641-42.  Each claim therefore fails for the same reasons his legal malpractice claim fails.

Lastly, although Svete seeks to conduct further discovery, his Rule 56(f) motion is improperly grounded on his own claim to innocense.  Accepting Svete's factual allegations as true, no amount of discovery will help him change the fact that his own criminal misconduct drove LifeTime Capital, Inc. into near financial ruin, thus triggering the need for the *LifeTime* litigation and for the creation of Lifetime receivership.  No amount of discovery will alter the fact that the damages Svete seeks to recover from Defendants in this case is based on purported losses he caused himself through his own criminal misconduct.  And no amount of discovery will alter the fact that he – in essence – complains that Defendants committed legal malpractice by failing to recover for him, the money he obtained by defrauding LifeTime Capital's investors.  Svete's Rule 56

Motion therefore lacks merit.  *See Egerer*, 556 F.3d at 427; *see also Thornton*, 566 F.3d at 618 (denial of 56(f) motion not an abuse of discretion when additional discovery would not affect outcome of the case); *Elvis Presley Enterprises*,  936 F.2d at 894.

Accordingly, for all the above reasons, Defendants' Motion for Summary Judgment is well taken.[6]

## IT IS THEREFORE RECOMMENDED THAT:

1.      Defendants' Motion For Summary Judgment (Doc. #54) be GRANTED;

2.      Svete's Motion to Compel (Doc. #62) and Svete's Pro Se Motion For Continuance Pursuant To Rule 56(f) (Doc. #65) be DENIED;

3.      Svete's Motion For Ruling On Two Motions Pending Before The Court (Doc. #60) be DENIED as moot;

4.      Svete's Motion For The Court To Direct United States Marshals To Serve Remaining Unserved Defendants (Doc. #61) be DENIED as moot; and

5.      The case be terminated on the docket of this Court.

November 24, 2009

_____s/ Sharon L. Ovington_____
Sharon L. Ovington
United States Magistrate Judge

---

[6]  Defendants raise additional grounds in support of their Motion for Summary Judgment. There is, however, no need to separately address each ground in light of the above analysis.

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).